OPINION
{¶ 1} Cedric E. Powell is appealing, pro se, from the denial of his petition for post conviction relief, without a hearing.
 {¶ 2} This court is very familiar with the facts of this case as it affirmed Powell's convictions of rape, kidnapping, two counts of felonious assault, one count of corruption of a minor (with an age specification), five counts of pandering sexually oriented matter involving a minor, and two counts of the illegal use of a minor in a nudity oriented material or performance and, finally, four firearm specifications. State v. Powell (Dec. 15, 2000), Montgomery App. No. 18095.
 {¶ 3} Powell offers two assignments of error in his pro se brief:
 {¶ 4} "1. The Trial Court Erred And/or Abused It's [sic] Discretion When It Denied The Petitioner Due Process Of Law By Denying The Petition Of Post-Conviction Relief.
 {¶ 5} "2. The Trial Court Erred And/or Abused It's Discretion [sic] When It Sustained The State's Motion For Summary Judgement Denying Petitioner Due Process Of Law."
 {¶ 6} We interpret the second assignment as an argument that his petition should have been given a hearing instead of being denied on the State's motion for summary judgment.
 {¶ 7} The trial court, the Hon. Dennis J. Langer, denied Powell's petition in a very thorough and extensive opinion which accurately analyzed both the facts and the law in this matter. We reproduce here only pertinent parts of that decision which summarizes the facts and law to support its decision that there is no reasonable probability that the outcome of Powell's trial would have been different but for the alleged error of his counsel, as follows:
 {¶ 8} "In his Petition for Post-Conviction Relief, Powell has submitted the affidavit of Devonte Kelley in which Kelley claims that he told Powell's attorney, Charles Smiley, of Shannon's recantation, but that `he [Smiley] said, I should testify in court, but I don't have to come, what I say want [sic] matter because the videotape and photos are going to hang him, so don't worry about coming to court to testify. So for that very reason I did not come to court to testify.' Petition, Exh. 3, Affidavit of Davonte Kelley. This affidavit was signed by Kelley on December 16, 2001 and was mailed to Powell at the Chillicothe Correctional Facility.
 {¶ 9} "Powell claims that Smiley discouraged Kelley from testifying at trial; that Smiley misled Powell into believing that Kelley's failure to testify was the result of Kelley's own actions; and that Kelley's testimony would have impeached the complainant, Shannon Trammell. This, Powell asserts, constitutes ineffective assistance of counsel that requires the voiding of his convictions.
 ANALYSIS AND CONCLUSIONS {¶ 10} "There Are No Substantive Grounds For Relief That Would Warrant A Hearing. Assuming That Devonte Kelley Had Testified At Trial, It Is Not Reasonably Probable That Powell Would Have Been Acquitted.
 {¶ 11} "Powell has submitted the affidavit of Devonte Kelley in which Kelley claims that he was discouraged by Powell's attorney, Charles Smiley, from testifying at trial. This claim is completely inconsistent with Mr. Smiley's representations — as an officer of the Court — that he had personally given Kelley residential service; that he had contacted Kelley the previous evening and instructed him to be at court at 9:00 a.m.; and that `I [Smiley] fully expected that he [Kelley] would be here at 9:00 this morning.'
 {¶ 12} "Putting aside whether the question of whether Kelley in fact was discouraged from testifying, this Court finds that if Kelley had testified, it is not reasonably probable that Powell would have been acquitted. This Court reaches this conclusion based upon several grounds:
 {¶ 13} "First, Kelley's testimony is not substantive evidence of Powell's innocence. It merely would have been an attempt to impeach Shannon's testimony. The success of that impeachment would be questionable given the testimony of Earl Martin that Powell directed his friend `Dee-Dee' to ask Shannon if he could pay her not to come to court to testify. Most importantly, Kelley's testimony would have been overwhelmingly outweighed by the testimony of other witnesses who strongly corroborated Shannon's claims of kidnaping, rape, and felonious assault against Powell.
 {¶ 14} "Second, Powell's suspicious behavior both during and after the incident is indicative of his guilt.
 {¶ 15} "Third, Shannon's behavior and excited utterances immediately after the incident support her claims against Powell.
 {¶ 16} "A. Kelley's testimony would have been overwhelmingly outweighed by testimony and evidence that corroborated Shannon's claims of kidnaping, rape, and felonious assault against Powell.
 {¶ 17} "1. The corroboration of Shannon's claim that she was brutally assaulted and whipped with an extension cord by Powell.
 {¶ 18} "Shannon testified that Powell brutally assaulted her and whipped her with an extension cord. This testimony was corroborated by the following:
 {¶ 19} "Powell admitted to Det. Lawson that Shannon stayed at his store from Thursday evening, February 18, until Saturday, February 20. There is no question that Shannon was assaulted during this period of time.
 {¶ 20} "Quincy Trammell testified that when he and Gloria Trammel, Shannon's mother, were at Powell's store on Saturday, February 20, he heard Shannon's voice crying out from the back of the store.
 {¶ 21} "Gloria testified that when she last saw Shannon on Thursday evening, she had no injuries. When she found Shannon the following Saturday afternoon, Shannon had a cigarette burn on her face, `whips on her back,' and a black eye.
 {¶ 22} "Earl Martin, Powell's friend for 5 to 6 years, testified that on Thursday night, Powell left his store and returned with Shannon. At that point Martin observed no bruises on Shannon's face. Martin heard Powell `hollering' at Shannon in the back room. Powell ordered Martin to lock up the shop and leave. When Martin returned the next morning, Friday, he observed Shannon handcuffed to the bed. Martin testified, `She was trying to ask me if I would help her.' Martin testified Shannon's face was `messed up.' `Her eye was black. I think it was swollen shut. Her mouth was busted.' He also testified that Shannon was naked from the waist up and that her pants were torn.
 {¶ 23} "Dr. Perry examined Shannon on Saturday. She observed bruising to Shannon's entire body, including loop-like linear bruising to her back, which were photographed by Officer Bryant. Dr. Perry testified that these bruises were consistent with being whipped with an electrical cord. Officer Bryant photographed an electrical cord tied to the corner of the bed frame in Powell's store. Bryant testified that the cord was `tied up in knots.' Shannon identified the photo of the extension cord as the one Powell used to beat her and tie to her to the bed.
 {¶ 24} "Finally, the police recovered a black and white striped sheet and a blue blanket from that bed in the back room of Powell's store. The sheet contained one blood stain and the blanket had two blood stains. These blood stains were consistent with Shannon's DNA.
 {¶ 25} "2. The corroboration of Shannon's claim that Powell pored gasoline on her.
 {¶ 26} "Shannon testified that Powell poured gasoline over her and that the gasoline drenched her coat and ran into her mouth and eyes. This testimony was corroborated by the following:
 {¶ 27} "There is absolutely no question that Shannon was drenched with gasoline. Quincy Trammell testified that when he and Gloria Trammel found Shannon on Saturday, Shannon `had a gasoline smell'; and that her overcoat had a strong odor of gasoline and had several spots of wet gasoline. Likewise, Nurse Black testified that Shannon's `clothes smelled very strongly of gasoline . . . We had to take some of the clothing off initially just to get them out of the room to get the smell of gasoline out of the room.' Likewise, Officer Mallott testified that when he contacted Shannon Trammell at the hospital, `When I opened the door, the first thing I noticed was an almost overwhelming odor of gasoline in the room. It was really very overpowering.' He testified, `It was coming from the victim.' Finally Michael Wathen, a forensic scientist, examined the canisters containing Shannon's torn panties and torn black pants. Utilizing a gas chromatograph, Wathen determined that both canisters contained gasoline.
 {¶ 28} "Additional testimony confirms that it was in Powell's store that Shannon was drenched with gasoline. Earl Martin testified that when he returned to Powell's store on Friday morning, he mopped up gasoline in the back room where he discovered Shannon handcuffed to the bed and beaten. Also, Gloria Trammel testified that on Saturday, while looking for Shannon in the back room of Powell's store, she detected the odor of gasoline. Finally, Officer Bryant testified that he found in Powell's store a mop with the odor of gasoline.
 {¶ 29} "3. The corroboration of Shannon's claim that Powell handcuffed her to the bed.
 {¶ 30} "Shannon testified that Powell handcuffed her to the bed. This testimony was corroborated by the following:
 {¶ 31} "Earl Martin testified that when he returned Friday morning to Powell's store, Shannon was handcuffed to a bed and `She was trying to ask me if I would help her.' Her face was `messed up,' that her eye was black and swollen shut, and her mouth was `busted.'
 {¶ 32} "Nurse Black testified that Shannon told her that her left wrist had been chained to the bed with a handcuff. Black then noticed that there was an injury to Shannon's left wrist as shown in State's Exh. 13.36.
 {¶ 33} "4. The corroboration of Shannon's claim that Powell anally raped her.
 {¶ 34} "Shannon testified that on Friday, February 19, Powell entered the back room of the store, flipped her over on her stomach, bent her upper body over the bed, and penetrated her anally with his penis.
 {¶ 35} "Shannon's claims that she was anally raped by Powell was corroborated by Powell's own friend, Earl Martin. On Friday morning, Martin observed Shannon in the back room of Powell's store. She had been beaten, handcuffed to the bed, was naked from the waist up, and was wearing torn pants. Martin testified that on the next day Powell told him, `My dick got hard and I fucked her in the ass.' Trial Transcript at 1485.
 {¶ 36} "B. Powell's suspicious behavior both during and after the incident is indicative of his guilt.
 {¶ 37} "On Saturday morning, when Gloria and Quincy Trammell went to Powell's store, Shannon testified that she heard her mother's voice and called out her name, `Gloria.' Quincy heard someone cry out from the back of the store and recognized the voice as Shannon's. Both Quincy and Mrs. Trammell noticed that Powell became `nervous' and `fidgety' and spoke louder to drown out Shannon's cries.
 {¶ 38} "After Shannon had been found and reported that she had been kidnaped, assaulted and raped by Powell, the police searched for Powell. Officer Strehle testified that upon arriving at Powell's store, he observed a black male (Powell) jump from a second story window and run down an alley. Powell was pursued by the police. Officer Beal encountered Powell 1/4 mile from his store. When Beal opened his cruiser door, Powell `took off running.' Powell slipped on gravel and was apprehended. Powell then blurted, `It's over for me. I wish you would just shoot me.'
 {¶ 39} "C. Shannon's behavior and excited utterances immediately after the incident supported her claims against Powell.
 {¶ 40} "The behavior and excited utterances of Shannon immediately after the alleged incident support her claims against Powell. Gloria and Quincy Trammell discovered Shannon at the payphone booth and placed her into the back seat of their car. Quincy testified that Shannon was `shaking and crying.' When Shannon got onto the floorboard, Gloria asked her why she had done that. Shannon screamed, `Sergio [Powell] is going to kill me. He's going to kill me.' Quincy recalled that Shannon was `shaking and crying' and that while crying said that `Cedric told her if she got away he would blow up her grandmother's house and would kill whomever.'
 {¶ 41} "D. Conclusion
 {¶ 42} "Powell claims that his trial counsel discouraged a witness, Devonte Kelley, from appearing at trial. This, Powell asserts, entitled him to post-conviction relief by reason of ineffective assistance of counsel. In order to prevail on his claim of incompetence of counsel, Powell must establish not only (1) that his trial counsel's effort fell below an objective standard of reasonableness, but also (2) that there is a reasonable probability that the outcome of his trial would have been different but for the error of his counsel.
 {¶ 43} "Assuming, arguendo, that Powell has fulfilled his burden with regard to the first issue, he fails with regard to the second issue. In considering Powell's Petition, the attached exhibits and supporting affidavits, all the files and records, the trial transcript, and the exhibits admitted into evidence at trial — and construing the evidence in the light most favorable to Powell — this Court finds that there is no reasonable probability that Powell would not have been convicted had Devonte Kelley testified at trial. This Court finds that there are no substantive grounds for relief that would warrant a hearing on Powell's Petition for Post-Conviction Relief.
 {¶ 44} "Therefore, Powell's Petition is hereby DENIED. The State's Motion for Summary Judgment is SUSTAINED."
 {¶ 45} We already know from the record in Powell's direct appeal that the trial court accurately and thoroughly summarized the facts of the case in the portions of its opinion quoted above. We hereby approve and adopt those quoted portions as our own, overrule both of Powell's assignments of error, and affirm the judgment.
BROGAN, J. and WOLFF, J., concur.